Good morning your honors and may it please the court. Julian London from Gibson, Dunn & Crutcher on behalf of the petitioner Carlos Renan Manzanilla. With the court's permission I would like to reserve three minutes for rebuttal. The court should grant Mr. Manzanilla's petition for review because the BIA erred for a number of reasons. But I'd like to begin today by focusing on one principal issue. The BIA erred in denying Mr. Manzanilla's withholding of removal claim based on its finding that there is a fundamental change in country conditions for LGBTI individuals in Mexico. That determination was wrong for two main reasons. First the BIA's decision was wrong as a matter of law. The BIA disregarded this court's binding precedent in Bringas Rodriguez v. Sessions which prohibits focusing on legal changes instead of actual practice when evaluating country conditions evidence. Second the BIA's decision was wrong because the record compels the conclusion that there has not been a fundamental change of circumstances in Mexico. There is nothing in the record to suggest that Mr. Manzanilla no longer faces a threat of persecution if he is returned there. I'm not sure you're right that they disregarded Bringas Rodriguez. Didn't they discuss it and distinguish it? Yes your honor the court did acknowledge this court's decision in Bringas Rodriguez and briefly mentioned it. But as you correctly note the court distinguished and essentially dismissed it by saying that Bringas Rodriguez was effectively irrelevant to this case because it dealt with the issue of past instead of future persecution. And that was wrong as the BIA concluded in direct contradiction to Bringas. The government had demonstrated changed country conditions in Mexico for LGBTI persons simply because the record demonstrates that attitudes towards gay and bisexual men in Mexico have changed and there are protections available to those in the LGBTI community. And that was legal error and expressly in contravention to this court's holding in Bringas v. Rodriguez. Nothing in Bringas. Okay in this case the IJ and the BIA assumed past persecution I guess based on the incident of 20 years prior. So then they had to assess whether it was more likely than not that he was going to be persecuted in the future. Correct? And then they decided that things are changing in Mexico not just the law not just the jury but de facto. So they made that decision. Don't I have their thinking correctly? Whether they're right or not is another matter. But isn't that what they did? Your Honor I would submit that that is that is not what the BIA or the IJ did in this case. Effectively they did what Bringas Rodriguez said they should not do which is place an over reliance on a change in laws. Certainly there was a throwaway sentence to a change in public attitudes which by the way in Bringas Rodriguez the court also acknowledged that the BIA had mentioned growing acceptance of a growing change in public attitudes as well and found that that was also insufficient. Here the IJ and the BIA mentioned in passing that there were sporadic incidents of violence throughout the record. Something to that effect. And so what they did here it's not that they did not mention whatsoever any other evidence in the record. It's that they say they placed undue reliance over reliance on changes in laws as opposed to actual practice. You don't dispute I take it that the change in law is at least relevant right? No Your Honor not at all. Certainly a change in laws is one factor that the BIA and the IJ could consider when looking at whether there has been a fundamental change in circumstances. Okay so so if they you know they mentioned the change in law and as you just acknowledged they they also mentioned the change in public attitude and then the next paragraph they sort of acknowledged that if there were still a practice of persecution in fact that that would be that would be another reason to grant withholding. I mean why why should we infer from sort of the totality of the things they said that they were putting all the weight just on the change in law? Because the substantial evidence in the record and in fact selectively considered the evidence before it. Ignoring substantial evidence in the record of significant violence discrimination and persecution that LGBTI individuals still face in Mexico. And as I mentioned the BIA mentioned this evidence of improving public attitudes and laws but it did not even mention an abundance of evidence showing this significant persecution. For example the BIA said the State Department report which this court has said is the best evidence of changed country conditions which indicated that there was quote sporadic violence against LGBTI individuals. But the State Department report does not mention sporadic violence to the contrary it states that the most significant human rights issues include lethal violence against lesbian, gay, bisexual, transgender and intersex persons. The state's front report also notes that civil society groups claimed police routinely subjected LGBTI persons to mistreatment while in custody and the discrimination based on sexual orientation was prevalent despite a gradual increase in public tolerance LGBTI individuals. It also mentioned a particularly egregious incident in which LGBTI activist Juan Jose Raldon Obia was beaten to death noting that his body showed signs of abuse. And that's just the State Department report. The BIA does not even reference the other articles submitted by the government which provide more evidence that LGBTI individuals face widespread abuse across Mexico. And in fact I would point your honors to this court's recent decision just last year in Xochitl Jaime V. Barr which evaluated the State Department report just one year prior to the report in this case and held that LGBTI individuals face heightened risk throughout Mexico. So effectively BIA in this case and the IJ selectively considered the evidence focused on a few throwaway pieces of evidence in the State Department report minimized the other evidence in the record. And this court has repeatedly held that when evidence in the record similar to what the petitioner similar to the harm that petitioner previously faced is still in the record that that is not evidence of a changed country conditions. And that evidence would compel any reasonable fact-finder to conclude that country conditions in Mexico have not sufficiently changed to rebut Mr. Manzanilla's well-founded fear of persecution. Far from demonstrating change in country conditions for LGBTI individuals the State Department report and articles in the record when considered in their entirety confirm abuses suffered just like those by Mr. Manzanilla in the past are common in Mexico. A question that's a little off point here but we're dealing with withholding of removal so that's a higher you know the higher burden in an asylum case. What's happening with this state court thing is he actually trying to get that undone? Yes your honor and he is actually and he has pro bono counsel who has been pointed to appeal and try to overturn his state court conviction and that's actually in the process of happening right now. His counsel has filed a California Penal Code section 1473.7 motion to vacate the 2014 conviction. And how does that intersect with the case we have? If it intersects because Mr. Manzanilla would be entitled to reopen and terminate his immigration proceedings if he is able to get that that conviction overturned or effectively reduced. And so there's no hearing set just yet but I've been told by his pro bono counsel that he likely will have a hearing set within three weeks or so. So certainly that could have an impact on his immigration proceedings. So that would go on no matter what we do here. Well no I guess not. If we okay tell me tell me what happens in the various scenarios of what we might do here. Certainly so in the event for instance that this court remands to the BIA and and allows the BIA to have another opportunity to for instance let's say you compel that there has been no fundamental change in circumstance and you remand the BIA to consider past persecution. While that was pending I believe that his motion to vacate would go on and if that was granted then he could effectively try to terminate his immigration proceedings at that point. If the court were to deny Mr. Manzanilla's petition for review and he were to be deported to Mexico I believe he may still be able to fight that conviction from afar. I'm not 100% certain of that but certainly it would be a much more difficult situation if he was doing that for Mexico. What you just said raises a question in my mind. I don't understand if if we find that the BIA was correct or within their rights in finding no no future no likelihood of future prosecution then what would we ever do with past persecution? Why does that create some they've already presumed past persecution. Why would we send it back? I don't get the link. Explain the logic to me. Sure so you would not send it back to the extent that you found that the BIA's decision was correct in finding that there was a fundamental change in circumstances that they're in the future persecution analysis. You would have to send it back if you held the opposite which I would submit that you should do because there is evidence. I misunderstood what you said. Okay thank you. Yes my apologies. Not your apologies I misunderstood. And so the court should reverse the BIA's finding of changed country conditions and hold that Mr. Manzanilla has established a well-founded fear of persecution. Turning to my next point the BIA also erred by failing to adequately assess Mr. Manzanilla's withholding of removal claim based on his objective risk of future persecution regardless of any past persecution he has faced. The court has held the disfavored group evidence is relevant to a withholding claim and the BIA errs by not considering it. Where the BIA has not analyzed a petitioner's withholding claim according to disfavored group analysis the court has remanded to the BIA for it to consider that analysis in the first instance. Here the BIA dispensed with Mr. Manzanilla's disfavored group analysis claim in one sentence stating although the respondent has not established he's more likely than not to be singled out for persecution he may be eligible for withholding based on his claim gay and bisexual males are a disfavored group if there's a pattern or practice of persecution. A disfavored group analysis is not even relevant to the pattern or practice wrong so that statement itself was in error. But more importantly the BIA did not engage in disfavored group analysis at all. I see that my time before rebuttal is up so I'm happy to address any further points on rebuttal. Thank you counsel. We'll hear from the government. Thank you your honor. May it please the court. Dawn Conrad on behalf of the Attorney General. In this case the board applied the proper legal standards in denying petitioners claim for statutory withholding of removal. The board's decision does not conflict with this court's prior decisions in Bringas Rodriguez and Avendano Hernandez because the board did not only consider the changes in the law when considering whether the presumption of future persecution had been rebutted but the agency also considered the changing as well as the full submission from DHS into the country conditions in the record which showed that there were safe areas in Mexico for LGBTI individuals to live. One of the concerns I have in this case because I sat on Bringas Rodriguez is that if you put the two country conditions reports side-by-side the one than the one that we had in Bringas Rodriguez. Bringas Rodriguez we had the 2009 and 2010 reports there was only one instance of discrimination found. There's nothing like the statement in this country conditions report about lethal violence against these protected groups. So just that's my concern in this case is that the evidence of persecution is a lot stronger in this case on the record than it was in Bringas Rodriguez. So it's it's difficult to see how the BIA could conclude based on that record that conditions were improving. If you put them side-by-side and you mask them you would say exactly the opposite. So I wanted to give you an opportunity to address that and I and I also take into consideration the fact that we still owe deference to the BIA's judgment and their collective. So give me your best argument that actually if you put these reports things are improving. Yes, well these are the more recent country conditions report as you noted from I believe 2017 and it did note that there were and I think the BIA weighed that in their consideration that there were incidents of violence and persecution against LGBTI individuals. So I think you have both the IJ and the board acknowledging that but I also think the board is looking at not only the country report but they cite the entire exhibit produced by DHS which did show that there were safe areas in Mexico such as Mexico City for LGBTI individuals. Well you know in the again with 2009 and 2010 country reports they have one I mean they made a point of saying there was only one instance of discrimination they found in a country of a hundred and twenty two million people. So that was kind of a big issue in Brindis Rodriguez as to whether or not there was proof of discrimination that the government was unwilling or unable to control. That was a point of controversy and I can't just looking at this and you have there are some there are some positive articles no question about it in this case but the country report condition conditions for is a lot worse than the one we had in front of us in Brindis Rodriguez. Well in Brindis Rodriguez this court was also looking at a situation about whether past persecution existed before 2004 for this individual and I believe the petitioner in that case have been raped multiple times by his family members. I mean the past persecution was really egregious in that case. I think that we think the board and the agency did the proper thing and weighing all the evidence in this case and determining that conditions and attitudes had changed since 1990. You're looking at a individuals because this was before you even had the legal protections in place were quite severe. So it is our position that the board and the agency properly considered and weighed the evidence in the record in this case. We think that there's a regional variation within Mexico. I mean in some cases we have some here we don't I guess because he never really lived there for several decades. So what take us through how that analysis should work. Well there's when you have a presumption when you when they presume past persecution like they did in this case there's they get a presumption of future persecution and there's two ways that the government can rebut that. Either the government can show that there was a fundamental change in country conditions since the time of the past persecution or the government can show that there is an area safe to relocate within Mexico where the petitioner would not face persecution. We did not have we did not reach that finding in this case because the agency relied on the first prong determining that there will had been a fundamental change in circumstances and your honor is correct that we don't know really any where petitioner would reside in Mexico. He haven't been such a long-term resident of the United States but I think the record evidence does show that there are several safe areas in Mexico for LGBTI individuals. So I guess I mean this is sort of following on the question from the chief judge that you know all of the article that the State Department report I mean you're your friend on the other side read some of the passages from that and the other articles you submitted they all say you know things are improving things are safe but I think every one of them also says you know and by the way you know some large number of people were murdered or you know other people were attacked I mean there's there's a lot of reports of violence in the materials that you submitted and so how given that how can we conclude that the government carried its burden of showing a fundamental change? Well the the agencies are the board and the IJ are allowed to consider conflicting evidence in the record and make a determination that certain evidence outweighs other evidence and I think that's what you have in this case and I don't think you have compelling evidence in the record that overturns that determination. So basically the board weighed the evidence and they determined that there had been a fundamental change in conditions since 1990 which again is a long period of time before the board looked at these conditions and they're allowed to reach that to determination and make a decision between conflicting evidence in the record. If we accept the government's position in this case that country conditions have changed in Mexico doesn't that mean there can never be a successful challenge? Not at all not at all. Because what what you're saying is even if there's past persecution it's rebutted by changed country conditions period. Tell me how somebody could succeed on a claim? Yes so each of these claims has to be reviewed individually based on individually evidence in the record. It is possible that a petitioner could introduce evidence showing that country conditions have worsened or have particularly he has a a well-founded fear or in this case more likely than not to be persecuted in Mexico. He country conditions have worsened in Mexico. So it's possible based on the individual submissions of any case that the agency could reach a different conclusion. The agency is just looking at the record in this case and you have petitioners 1990 incident versus when the agency considered the as evidence in this case and reached that determination. Petitioner also could show oh persecution isn't an issue in this case it's purely changed country conditions. So that's correct. You think the board would actually say no we were wrong country conditions have gotten worse than a different case? Well this decision in this case is not precedential so the board could look at the facts differently in a different case based on the record in that case. I think you're saying that they're assessing change from 1990 and that it could be a more recent persecution. That's correct. Opposing counsel wants you to consider suppose we're not dealing with this past persecution in 1990 but here's a person who alleges because he's in a particular social group a chance of future persecution. Then you're kind of out of the we're just focusing on whether it's been a change between 1990 and today. Correct? Correct but that's a different determination. So the first determination is whether change there had been a fundamental change in country conditions sufficient to rebut the presumption of persecution. If the court upholds the board's determination on that issue petitioner still has the opportunity to demonstrate that he showed an object that is more likely than not that he will be persecuted in Mexico based on objective evidence. But here the board recently found that we do not have that evidence. We actually have no evidence that he will be specifically targeted for persecution because aside from this incident in 1990 we have no other evidence that he is going to be threatened targeted or anything in sexuality. There's no evidence in that record such as this court has considered in other cases where like Bringus Rodriguez the person still had threats about what would happen to him in Mexico. Aventana Hernandez that was a cat case so a little different but that person had been raped and I believe multiple times by police and military officers. So we just don't have that kind of specific evidence in this case and also the board was correct in finding there's not a pattern we don't on this record have a pattern in practice of persecution. Now if the petitioner can show that he would not have to show the specific that he would be singled out for persecution in Mexico. You understand the reason a lot of this case is quite strange is because he hasn't really lived in Mexico. He's not from Mexico and so all the normal thing way you analyze these things are very difficult to fit into this pattern. So I'm not sure an approach isn't needed for somebody who's never really lived in that country. Yes your honor I understand what you're saying I think you know even it was certainly not requiring him to have it he doesn't have to return to Mexico of course after 1990 to establish that it's more likely than not that he could be persecuted. He could have shown other evidence that his friends that live in Mexico had been targeted because they were bisexual or he could have received threats from people in Mexico. There's no requirement that he has has returned there of course. But we don't have that evidence in this case and we also don't have evidence showing the extreme systemic and widespread violation of rights that we saw in a case like Bromfield where Jamaica had outlawed homosexual conduct and we and they showed a very broad pattern and persecute a pattern and practice of persecution in Jamaica. I would also like to note in this courts opposing counsel mentioned this courts decision last year in Joshua Jaime's and in that case that was a cat case and the court did note that there's a heightened risk of torture for LGBTQ individuals throughout Mexico but it also held that petitioners LGBTQ identity alone which is pretty much what we have in this case may not meet the more likely than not standard required for cat and of course that is the same more likely than not burden of proof required for withholding of removal. And we would also argue that just turning to quickly to petitioners claim for cat protection we would argue that substantial evidence supports the board's denial of cat protection. Here the board found that the IJ's determination was not clearly erroneous and the IJ found that petitioner did not in 1990 did not suffer past persecution I'm sorry did not suffer past torture and the IJ found petitioners fear of future torture was speculative. If there's no further questions we respectfully ask the courts to deny the petition for review. Thank you counsel and I know it's very early in the morning back there so thank you for appearing by video on the West Coast. We'll hear about it. Thank you. Your honors so just a few brief points in response. First the government mentioned that the BIA and the IJ had a throwaway mention to changing attitudes as being sufficient and and also claimed that BIA and the IJ acknowledged the articles in the record. So I just wanted to point out the question before the BIA and before this court is not whether there has been an improvement in conditions in Mexico. Certainly things may have changed since 1990. The question is whether there has been a fundamental change in circumstances such that Mr. Manzanilla no longer faces a likelihood of future persecution if he is returned there and we have to remember that. Second the government focused on the issue of safe areas and the possibility of certain aspects certain portions of Mexico being safe for Mr. Manzanilla and as this court rightly recognized that issue is not before this court. The question is not whether or not Mr. Manzanilla could safely relocate from one area of Mexico to another. Third I'd like to speak briefly to the idea that because this the incident with Mr. Manzanilla happened so long ago in 1990 that this long passage of time somehow should come into play and this court has held in Salazar that that's simply not the case. That the long passage of time when a petitioner faced past persecution and the conditions in the country today is not enough to show that there has been a fundamental change in circumstances. Another issue that the government mentioned is that there is conflicting evidence in the record and that the BIA is entitled to weigh that evidence. Certainly we don't disagree with that point. The BIA is entitled to weigh conflicting evidence in the record but they are not entitled to do is exactly what they did here which is to consider the evidence in the record to ignore the evidence in the record which shows substantial and widespread persecution not just in the State Department report but also in the articles that were submitted by the government itself. And I'd like to direct the court actually to one case Singh v. Holder which the government cited throughout its brief. That is the case that shows what a fundamental change in circumstances actually looks like. In that case the court noted that today conditions for Indian Sikhs differ dramatically from those of the 1980s and 1990s. This was in 2014 and Sikhs have ascended to the highest level of the Indian government. And it also noted that the State Department report was devoid of any mention of recent or ongoing persecution of Sikhs even though it extensively cataloged threats of human rights encountered by various political religious and ethnic groups in India. That is a fundamental change in circumstances. There has not been a fundamental change of circumstances in this case and we ask that you grant Mr. Manzanilla's petition for review. Thank you. Thank you both for your arguments this morning. The case just argued will be submitted and Ms. London thank you for your pro bono representation. The court appreciates that and we will proceed with the argument in the last case on this morning's oral argument calendar which
judges: Thomas, Restani, Miller